# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL GARRISON,                  :      Civ. Action No. 04-1114 (NLH)
                                   :
        Plaintiff,                 :
                                   :
    v.                             :      **OPINION**
                                   :
WILLIAM PORCH, et al.,             :
                                   :
        Defendants.                :

**APPEARANCES:**

Paul Richard D'Amato, Esquire
Steven R. Cocchi, Esquire
D'Amato Law Firm
401 New Road
Suite 103
Linwood, NJ 08221

      *Attorneys for Plaintiff*

Joseph M. Scott, Esquire
Barker & Scott, PC
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221

      *Attorney for Defendant William Porch*

**HILLMAN**, District Judge

        This matter has come before the Court on Defendant's motion
for summary judgment on Plaintiff's claims that Defendant
violated his Fourth Amendment rights when Defendant unreasonably
seized him and used excessive force in effecting his arrest.
Defendant has also moved for summary judgment on Plaintiff's
conspiracy claims, as well as Plaintiff's state law claims.  Also
pending before the Court is Defendant's motion for summary

judgment as to Plaintiff's liability on Defendant's counterclaim against Plaintiff for the intentional tort of assault and battery.  For the reasons expressed below, Defendant's motion for summary judgment on Plaintiff's claims against him will be granted, Defendant's motion for summary judgment on his assault and battery counterclaim against Plaintiff will be denied without prejudice, and Defendant's counterclaims against Plaintiff will be stayed.

I.    **SUMMARY OF THE FACTS**

According to the parties' uncontested statement of facts, on the evening of March 29, 2002, Plaintiff Michael Garrison and several friends met each other at a North Wildwood, New Jersey home, and from there they all took a cab to Moore's Bar.  Prior to arriving at Moore's Bar, Garrison had consumed one or two beers and had smoked marijuana.  At the bar, Garrison consumed two or three mixed drinks and took an ecstasy pill.  From Moore's Bar, the group walked to one or two other bars, at which Garrison consumed more alcoholic beverages.  After midnight, the group walked to Keenan's Bar, where Garrison, already intoxicated, consumed a beer.  At approximately 1:50am, Garrison and the rest of the group exited Keenan's Bar, and Garrison began to urinate outside the bar.  Garrison's zipper was down and his pants were unbuttoned while he was urinating.  Defendant William Porch, a City of Wildwood police officer who was dressed in plain clothes

2

for a suspicious person/burglary detail, observed Garrison urinating outside of the bar.

At this point, the parties' version of events diverge. According to Garrison's deposition testimony, Porch approached Garrison, grabbed his bicep, turned him around, and held both of Garrison's fists in his hands. When Garrison turned around, he had both fists clenched up near his chin with the knuckles facing away from his body. Garrison next remembers Porch pulling him to the ground, but does not recall how he was forced to the ground, which part of his body hit the ground first, or in what position he landed. Once he was on the ground, Garrison recalls his ear and stomach being on the sidewalk. At this point, Garrison cannot specifically remember what occurred, but he does recall that his face was forced into the ground and that he heard the bones breaking in the back of his neck, he went warm, and then totally limp. Garrison does not recall resisting arrest.

According to Porch, he approached Garrison as he was just walking away from the building after urinating. Porch states that he identified himself as a police officer and illuminated his badge with his flashlight, but Garrison continued to walk away. When Garrison was about eight feet away, Porch told Garrison that he was not free to go and asked him to produce identification. Porch states that Garrison used expletives and refused to comply. Porch told Garrison that he was not free to

3

leave, he must produce identification, grabbed Garrison's left wrist with both hands using a "soft-touch empty-hand" technique, and told him he was under arrest. According to Porch, Garrison's body began to get rigid and he began to pull away and turn around in an attempt to face Porch. Porch states that he repeated several times that Garrison was under arrest and commanded him to stop resisting. At this point, Porch states that he thought Garrison was going to strike him, so he used Garrison's spinning momentum to sidestep him and place him up against the wall. Porch states that Garrison attempted to head-butt Porch "in reverse" and continued to resist arrest. In order to avoid Garrison's head-butt, Porch states that he moved away and Garrison spun around with his fist raised in a motion to hit Porch. Porch then used a pulling technique to Garrison's arm to pull him to the ground. While he was on the ground, Porch states that Garrison continued to thrash his entire body, kick his legs, and pull his arms toward his chest to avoid handcuffing. According to Porch, Garrison's five friends were completely surrounding them and shouting and gesturing in rage toward Porch's attempts to effect Garrison's arrest.

Porch was able to secure one handcuff, but he had to move from Garrison's left side to his right side because Garrison kicked him several times. Porch then radioed for back-up. When another officer arrived, Porch sat down below Garrison's knees to

stop him from kicking.  During this encounter, Porch states that Garrison kicked him repeatedly, trashed his head back and forth, "continuously trying to spin out of control," and continued to yell obscenities.  At this point, Garrison began to complain of neck and back pain and his body became limp and stationary. Garrison told Porch that Porch broke his neck.  Porch was then able to secure Garrison's right arm and complete handcuffing.  An ambulance was called and Garrison was transported to the hospital.[1]

Garrison was charged with aggravated assault on a police officer, resisting arrest, disorderly persons conduct, and urinating in public.  The grand jury indicted Garrison on the aggravated assault and resisting arrest charges.  On May 30, 2003, Garrison pled guilty to an amended charge of simple assault

---

[1]According to Garrison's Complaint, he was transported to Burdette Tomlin Memorial Hospital, where he was unable to move his lower extremities and was found to have neural deficits.  He was then transferred to Atlantic City Medical Center, City Division, where X-Rays revealed a possible cervical spine fracture located at C5-C6.  Garrison was then placed in a halo, intubated and sedated, and airlifted to Thomas Jefferson University Hospital, where he was an inpatient from March 30, 2002 through April 4, 2002.  While at Thomas Jefferson University Hospital, Garrison was diagnosed with a C6 body fracture, C6 bilateral laminar fracture, C5 right laminar fracture, and spinal cord edema and intramedullary signal changes from C5 to C7.  He was then transferred to Magee Rehabilitation Hospital where he was an inpatient from April 4, 2002 through April 26, 2002. Garrison received outpatient rehabilitation therapy at Magee Riverfront Outpatient Physical Therapy from April 29, 2002 through September 5, 2002.

in violation of N.J. Stat. Ann. 2C:12-1A, and purposefully

resisting arrest, in violation of N.J. Stat. Ann. 2C:29-2A.[2]

## II.  PROCEDURAL HISTORY

Garrison filed a Complaint against numerous parties alleging

numerous claims.  Porch filed a counterclaim against Garrison.

Through Orders of the Court and stipulation of the parties, the

only claims that remain pending are: 1) Garrison's claims against

Porch for unreasonable seizure and the use of excessive force in

violation of his Fourth Amendment rights; 2) Garrison's claims

---

[2]N.J. Stat. Ann. 2C:12-1A, Simple assault, provides,

A person is guilty of assault if he:
(1) Attempts to cause or purposely, knowingly or
recklessly causes bodily injury to another; or
(2) Negligently causes bodily injury to another with a
deadly weapon; or
(3) Attempts by physical menace to put another in fear
of imminent serious bodily injury.
Simple assault is a disorderly persons persons offense
unless committed in a fight or scuffle entered into by
mutual consent, in which case it is a petty disorderly
persons persons offense.

N.J. Stat. Ann. 2C:29-2A,  Resisting arrest; eluding
officer, provides,

a. (1) Except as provided in paragraph (3), a person is
guilty of a disorderly persons persons offense if he
purposely prevents or attempts to prevent a law
enforcement officer from effecting an arrest.
. . .
It is not a defense to a prosecution under this
subsection that the law enforcement officer was acting
unlawfully in making the arrest, provided he was acting
under color of his official authority and provided the
law enforcement officer announces his intention to
arrest prior to the resistance.

against Porch for intentional infliction of emotional distress,
negligent infliction of emotional distress, negligence, and
assault and battery; 3) Garrison's claim against Porch for
conspiracy; 4) Garrison's claim against the City of North
Wildwood to the extent that the City is vicariously responsible
for the negligent acts or omissions of Porch; and 5) Porch's
claims against Garrison for assault and battery, intentional
infliction of emotional distress, negligent infliction of
emotional distress, and negligence.

Porch has moved for summary judgment on all of Garrison's
claims against him. Porch has also moved for summary judgment as
to Garrison's liability on Porch's assault and battery
counterclaim.

## III. DISCUSSION

Porch argues that he is entitled to summary judgment on all
of Garrison's claims because of Garrison's guilty pleas to the
disorderly persons offenses of simple assault and resisting
arrest. Porch also argues that Garrison's convictions for these
offenses establishes his liability as a matter of law on Porch's
assault and battery counterclaim.[3] The effect of Garrison's

---

[3]In his opposition to Porch's motion for summary judgment,
Garrison raises for the first time the claim that Porch committed
fraud by not including certain incidents in his official report,
and by claiming that Garrison broke his ribs even though
Garrison's expert claims that Porch's treatment records do not
demonstrate the temporal element that Porch's broken ribs

convictions on his and Porch's claims will be discussed in turn.

    **A.   Whether Garrison's guilty pleas to the disorderly persons offenses of simple assault and resisting arrest precludes his constitutional violation claims for unreasonable seizure and excessive force**

Porch argues that Garrison's claims for "freedom from unreasonable physical seizure" and "freedom from the use of excessive and unreasonable force" are barred by Heck v. Humphrey, 512 U.S. 477 (1994). Under Heck, if a favorable judgment on a § 1983 damages claim would "necessarily imply the invalidity" of the plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Heck, 512 U.S. at 486-87. Thus, the question before the Court is whether a finding in favor of Garrison on his unreasonable seizure claim and/or excessive force claim necessarily implies the invalidity of his guilty pleas for the disorderly persons offenses of simple assault and resisting arrest.[4] In order to answer that

_____

occurred on March 30, 2002. (Def.'s Br. at 3-4.) Porch argues that these fraud claims should be dismissed because Garrison failed to plead them in his Complaint with the required particularity, and because Garrison has failed to state a valid claim for fraud. Because Garrison did not assert these fraud claims in his Complaint or Amended Complaint, and these fraud claims do not affect the viability of his other pleaded claims, the Court does not need to address this issue.

    [4]Garrison argues that Heck does not bar his constitutional claims because his guilty pleas were for disorderly persons persons offenses, which are not "crimes" in the State of New Jersey. (Pl.'s Br. at 5-6.) Garrison's argument is untenable.

question, the elements of Garrison's § 1983 claims and the elements of the crimes to which Garrison pled guilty must be compared.

### 1.    Whether Garrison's Claim for Unreasonable Seizure under the Fourth Amendment is Barred by Heck

A "person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement."  Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).  Garrison admits that he was seized, but claims that Porch's seizure of him was unreasonable.  It is unclear whether Garrison is arguing that Porch did not have probable cause to detain and/or arrest him, or that he was falsely arrested, or that Porch's physical contact with him was unreasonable.  If Garrison is only contending that Porch's physical contact with Garrison was unreasonable, that claim is subsumed by his claim of "excessive and unreasonable force," and the standard for that violation will be discussed below.  To the extent that Garrison is claiming that Porch lacked probable cause to detain him, and, as a result, his arrest was false, it is clearly established under the Fourth Amendment that the police

---

The Third Circuit has held that pleading guilty to a disorderly persons conduct charge is sufficient to bar a subsequent § 1983 claim.  See Gilles v. Davis, 427 F.3d 197, 209 n.8 (3d Cir. 2005) (holding that under Heck entering into an Accelerated Rehabilitation Disposition (ARD) program pursuant to a guilty plea for a disorderly persons conduct offense does not constitute a favorable termination, and thus may bar a plaintiff's § 1983 claim).

may not make an arrest except upon probable cause. "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (citations omitted). For a § 1983 claim based on false arrest, the inquiry is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

If judgment were to be entered in favor of Garrison on this claim, it would mean that Porch did not have probable cause to detain and subsequently arrest Garrison. Thus, it must be determined whether this finding would invalidate Garrison's convictions for simple assault and/or resisting arrest. By his guilty plea to the offense of resisting arrest, Garrison admitted that he purposely prevented or attempted to prevent a law enforcement officer from effecting his arrest. As explained by the Supreme Court, pleading guilty to the crime of resisting

10

arrest means that Garrison intentionally prevented "a peace officer from effecting a *lawful* arrest," and that in order for Garrison to prevail on his false arrest/unreasonable seizure claim, "he would have to negate an element of the offense of which he has been convicted."  Heck, 512 U.S. at 487 n.6 (emphasis in original); see also Nelson v. Jashurek, 109 F.3d 142, 144 (3d Cir. 1997) (interpreting Heck to hold that "a civil suit for an unreasonable seizure predicated on a false arrest would be barred so long as a conviction for resisting the same arrest remained unimpaired").

Consequently, because it is undisputed that Garrison's convictions have not been invalidated, Garrison's § 1983 claim for unreasonable seizure is barred.[5]

---

[5]Even if Garrison's unreasonable seizure claim was not barred by Heck, Porch would be entitled to summary judgment. Generally, "the question of probable cause in a section 1983 damage suit is one for the jury," Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998), but a district court may conclude, "that probable cause did exist as a matter of law if the evidence, viewed most favorably to defendant, reasonably would not support a contrary factual finding," Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997); Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause only requires a "fair probability" that a person committed the relevant crime). Here, Garrison does not dispute that he was urinating outside the bar when Porch approached him.  Thus, Porch had probable cause to seize Garrison because the circumstances within Porch's knowledge were sufficient to warrant a reasonable person to believe that an offense was being committed by Garrison.

2.  **Whether Garrison's Claim for Excessive and Unreasonable Force under the Fourth Amendment is Barred by <u>Heck</u>**

The next question is whether Garrison's claim for excessive and unreasonable force under the Fourth Amendment is barred by <u>Heck</u>.  The threshold inquiry in an excessive force case is whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'"  <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989); <u>see</u> <u>Brower v. County of Inyo</u>, 489 U.S. 593, 599 (1989).  The proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  <u>Graham</u>, 490 U.S. at 396.  The Third Circuit has added other relevant factors, including, "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  <u>Sharrar v. Felsing</u>, 128 F.3d 810, 822 (3d Cir. 1997).

Based on the test for a claim for excessive force, Porch

12

argues that a judgment in favor of Garrison on his excessive
force claim would invalidate his guilty pleas to resisting arrest
and simple assault.  Garrison counters that based on <u>Nelson v.
Jashurek</u>, 109 F.3d 142 (3d Cir. 1997), his guilty pleas are not a
bar to his excessive force claim.

In <u>Nelson</u>, the plaintiff was convicted in state court of
resisting arrest in violation of a Pennsylvania statute, "which
provides that a person is guilty of resisting arrest if 'with the
intent of preventing a public servant from effecting a lawful
arrest [he] creates a substantial risk of bodily injury to the
public servant . . . or employs means justifying or requiring
*substantial force* to overcome the resistance.'"  <u>Nelson</u>, 109 F.3d
at 145 (emphasis in original).  Following his conviction, the
plaintiff filed suit pursuant to § 1983 against the arresting
officer, claiming that the officer used excessive force in
effecting his arrest.  <u>Id.</u> at 144.  The district court dismissed
the plaintiff's excessive force claim, finding that <u>Heck</u> barred
his claim because a judgment in his favor would invalidate his
conviction for resisting arrest.  <u>Id.</u> at 144-45.  On appeal, the
Third Circuit reversed, holding that a finding that the officer
used excessive "substantial force" would not imply that the
arrest was unlawful.  <u>Id.</u> at 145.  The court explained,

> Our difficulty with the district court's result is that
> the fact that [the officer] was justified in using
> 'substantial force' to arrest [the plaintiff] does not

13

> mean that he was justified in using an excessive amount
> of force and thus does not mean that his actions in
> effectuating the arrest necessarily were objectively
> reasonable.  In short, there undoubtedly could be
> 'substantial force' which is objectively reasonable and
> 'substantial force' which is excessive and
> unreasonable.

Id.

Despite Garrison's reliance on Nelson, it is distinguishable from the case here because the plaintiff in Nelson was only convicted of resisting arrest, while Garrison was also convicted of assault.  Garrison pled guilty to N.J. Stat. Ann. 2C:12-1A, Simple Assault, and admitted that he attempted to cause or purposely, knowingly or recklessly caused bodily injury to Porch. It would incongruous to hold that Garrison "attempted to cause or purposely, knowingly or recklessly caused bodily injury to" Porch, while at the same time Porch's use of force in effecting Garrison's arrest was excessive.

The incongruity is even more evident when looking at what Garrison needs to prove to prevail on his excessive force claim. To prevail on his excessive force claim, Garrison must prove that Porch's use of force was not objectively reasonable.  To do so, Garrison could try to argue that he never attempted to, or actually did, cause bodily injury to Porch.  That argument, however, would contradict his conviction for assaulting Porch. Garrison could also try to argue that the force used by Porch was not reasonably necessary.  This second claim would invalidate his

14

assault conviction because it would imply that he acted in self-defense, which is a justification defense under New Jersey law.

To establish the affirmative defense of self-defense, a criminal defendant must prove that he possessed an actual, honest belief in the necessity of using force, and that the necessity to use force was reasonable.  See State v. Rivers, 599 A.2d 558, 561 (N.J. Super. Ct. App. Div. 1991).  A citizen may "protect himself whenever the force applied is excessive and unnecessary."  State v. Moriarty, 338 A.2d 14, 19 (N.J. Super. Ct. App. Div. 1975).  In Garrison's criminal proceedings, the fact that he did not assert self-defense, and instead pled guilty to assaulting Porch, demonstrates that the force applied to him was not excessive and unnecessary.  To allow Garrison to now argue facts to the contrary would violate the principles of Heck.

A similar analysis was applied in a recent Third Circuit case.  In Jennings v. Fetterman, 197 Fed. Appx. 162, 163 (3d Cir. 2006), Jennings, the plaintiff, fled his vehicle after being pulled over.  A chase ensued, during which Jennings stole a police officer's revolver and shot him in the leg.  Jennings continued to run, and additional officers were called to assist in the chase, including the defendant Dawley, an off-duty officer.  Id.  After two hours of searching and a gun battle, which resulted in Dawley and Jennings each receiving five gunshot wounds, another officer, the defendant Fetterman, jumped on

15

Jennings' back and struggled to handcuff him.   Id.   Fetterman was
able to handcuff Jennings afer hitting and kicking him in the
head, ribs, and groin.   Id. at 164.   After a jury trial,
Jennings was convicted of attempted homicide.   Id.

　　　Following his conviction, which was upheld on appeal,
Jennings filed lawsuits against Fetterman and Dawley for
violations of his constitutional rights.   Id.   Jennings claimed
that Dawley used excessive force by shooting at him while under
the influence of alcohol and that Fetterman violated his civil
rights by calling Dawley to return to duty even though he knew
that Dawley was intoxicated.   Id.   The Third Circuit upheld the
district court's determination that Jennings' claims were barred
as a matter of law by Heck.   Id.   The court explained that in
order for Jennings to succeed on his excessive force claim, he
would have had to show that Dawley's shooting at him was
unreasonable in light of the circumstances.   Id.   The court
reasoned that Jennings' attempted homicide conviction
"necessarily meant that the jury had rejected Jennings' theory
that he had shot Dawley in self defense."   Id.   The court further
reasoned "that a judgment in favor of Jennings on his excessive
force claim would contradict this jury finding and, by logical
extension, invalidate the attempted homicide conviction."   Id.;
see also Smith v. Mitchell, No. 97-6115, 2000 WL 33256676, *3
(D.N.J. Nov. 21, 2000) (holding that a finding for the plaintiff

16

in on his excessive force claim would necessarily imply the invalidity of the plaintiff's conviction for aggravated assault).

Cases in other jurisdictions support this conclusion as well.  In Cummings v. City of Akron, 418 F.3d 676, 679 (6th Cir. 2005), two police officers, defendants Sherman and Vaughn, investigated a domestic disturbance between the plaintiff Cummings and his girlfriend.  Cummings refused to allow the officers to enter his home, but the officers smelled marijuana. Id.  Cummings tried to close the door, but Sherman's foot was inside the doorway.  Id.  Sherman and Vaughn both pushed the door open, entered Cummings' home, and a struggle ensued.  Id.  The officers attempted to arrest Cummings, but he resisted, running out onto his front porch.  Id. at 680.  During the struggle, Sherman and Vaughn struck Cummings with their fists and batons, sprayed him with pepper spray, and a third officer arrived on the scene and used a Taser gun on him.  Id.  Once Cummings was finally subdued, he was handcuffed and taken into police custody. Id.  Cummings was charged with various offenses, but he pleaded no contest to a reduced charge of misdemeanor assault on Vaughn, and all other charges against him were dropped.  Id.

Cummings then filed a lawsuit against Vaughn and Sherman, alleging that they used excessive force in effecting his arrest. Id.  The district court granted summary judgment in favor of Vaughn and Sherman, holding that Heck barred Cummings' claims.

17

Id. at 681.  On appeal, the Sixth Circuit affirmed that district court's decision:

> We agree with the magistrate judge that success on
> Cummings' excessive force claim would necessarily imply
> the invalidity of his state assault conviction. The
> struggle between Cummings and the officers gave rise to
> both Cummings' assault conviction and the excessive
> force claim, and the two are inextricably intertwined.
> Additionally, Cummings could have raised excessive
> force as a defense to the assault charge, but instead
> he chose not to contest the charge. Thus, we hold that
> Heck bars Cummings' excessive force claim from moving
> forward, and we affirm the district court's grant of
> summary judgment to defendants on this claim.

Id. at 682-83.

Similarly, in Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996), the plaintiff, Hudson, who had been convicted of battery of an officer, filed a claim for excessive force against the arresting officers.  The court affirmed the district court's grant of summary judgment in favor of the officers based on Heck. Id.  The court explained that because self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that the officers used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer.  Id.  "This is true because the question whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were,

18

necessarily undermines that conviction." Id.

The rationales of Jennings, Cummings, and Hudson apply to this case. Here, as in those cases, because the conviction and events giving rise to Garrison's excessive force claim are inextricably intertwined, and because Garrison pled guilty to assault, an offense for which self-defense is a defense, a judgment in favor of Garrison on his excessive force claim would undermine his conviction. Accordingly, Garrison's § 1983 claim for excessive force claim is barred.

**B.    Whether Garrison's guilty pleas to the disorderly persons offenses of simple assault and resisting arrest amount to judicial estoppel of his Fourth Amendment claims**

Porch argues in the alternative that the doctrine of judicial estoppel bars Garrison's Fourth Amendment claims. Because Garrison's claims for unreasonable seizure and excessive force are barred by Heck, the Court does not need to decide whether the claims are barred by judicial estoppel.

**C.    Whether Porch is entitled to qualified immunity for Garrison's Fourth Amendment claims**

Porch asserts another alternative argument by contending that he is entitled to qualified immunity on Garrison's Fourth Amendment claims. As with his judicial estoppel argument, because Garrison's constitutional claims are barred by Heck, the Court does not need to decide whether Porch is entitled to qualified immunity.

19

D.    **Whether Garrison's conspiracy claims under § 1983 should be dismissed**

In his Complaint, Garrison has asserted a claim that Porch and all the original defendants conspired to violate his constitutional rights.  Porch has moved for summary judgment on this claim.

Garrison's conspiracy claim fails for two reasons.  First, Garrison's constitutional violation claims are barred by Heck, and, without any valid constitutional claims, Porch cannot be held to have conspired to violate his constitutional rights.  Second, Garrison has not opposed Porch's motion on this claim, and he has not set forth any evidence that Porch acted "in concert to commit an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose."  Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974) (citation omitted).  Even though a plaintiff may present both direct and circumstantial evidence of an agreement to conspire, Ball v. Paramount Pictures, 169 F.2d 317, 319 (3d Cir. 1948), Garrison has failed to provide any evidence.  Because Garrison must identify specific facts and affirmative evidence that contradict those offered by the moving party in order to withstand a properly supported motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986), judgment in favor of Porch on Garrison's conspiracy claim must be granted.

**E.    Whether Garrison's guilty pleas to the disorderly persons offenses of simple assault and resisting arrest precludes his tort claims**

Porch contends that Garrison's tort claims should be dismissed based upon the immunity set forth in the New Jersey Tort Claims Act (NJTCA).  Garrison argues that Porch is not entitled to NJTCA immunity.

The NJTCA provides absolute immunity to a public employee for "any injury caused by . . . a person resisting arrest or evading arrest" or "any injury resulting from or caused by a law enforcement officer's pursuit of a person."  N.J. Stat. Ann. 59:5-2(b),(c).  Only a finding that the officer engaged in "willful misconduct" abrogates that immunity.  See Tice v. Cramer, 627 A.2d 1090, 1105 (N.J. 1993) (citing N.J. Stat. Ann. 59:3-14a ("Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.")).

What constitutes "willful misconduct" is not expressly defined in the statute.  The New Jersey Supreme Court has interpreted "willful misconduct" to require "'much more' than mere negligence," and it "will fall somewhere on the continuum between simple negligence and the intentional infliction of harm."  Alston v. City of Camden, 773 A.2d 693, 702 (N.J. 2001).  In the context of police vehicular pursuits, the New Jersey

21

Supreme Court has instructed that willful misconduct has two elements: "1) disobeying either a specific lawful command of a superior or a specific lawful standing order and 2) knowing of the command or standing order, knowing that it is being violated and, intending to violate it." Fielder v. Stonack, 661 A.2d 231, 243 (N.J. 1995).

To the extent that the requirement that the knowing and intentional violation of a direct order applies to a police officer dealing with a person who is resisting arrest, there is nothing in the record to show that Porch knowingly and intentionally disobeyed a superior officer's command during his interaction with Garrison. Thus, under this theory, Porch is immune from suit on Garrison's tort claims.

Even if that requirement does not apply in this case, however, the principles of Heck weigh in favor of Porch's immunity. In crafting the rule that a plaintiff cannot maintain a § 1983 damages claim that would "necessarily imply the invalidity" of the plaintiff's conviction or sentence, the Supreme Court looked to tort law, stating, "We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for

malicious prosecution." Heck v. Humphrey, 512 U.S. 477, 485 (1994). The need for finality and consistency speaks to this longstanding rule that limits the ability of a tort plaintiff to collaterally attack his criminal convictions. See id. A finding that Porch was liable to Garrison for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and assault and battery would allow Garrison to collaterally attack his resisting arrest and simple assault convictions, and would run contrary to the need for finality and consistency. Thus, whether under the NJTCA immunity provision or Heck, Garrison's tort claims against Porch must be dismissed.

**G.    Whether Porch is entitled to summary judgment on his assault and battery counterclaim as to Garrison's liability**

Porch has also moved for summary judgment as to liability on his assault and battery counterclaim against Garrison. This claim, as well as his other counterclaims, presents the issue of whether a police officer can sue an arrestee for injuries the officer sustained while he was making the arrest. In 1960, the New Jersey Supreme Court adopted the common law doctrine, usually referred to as the "fireman's rule," which bars a firefighter from recovering damages against a property owner for injuries received while battling a fire caused by the property owner's negligence. See Ruiz v. Mero, 897 A.2d 407, 408 (N.J. Super. Ct. App. Div. 2006) (citing Krauth v. Geller, 157 A.2d 129 (N.J.

23

1960)).  The fireman's rule was then extended to police officers.

See id. at 409 (discussing Rosa v. Dunkin' Donuts, 583 A.2d 1129

(N.J. 1991), which applied the fireman's rule to a police officer

who sued a property owner for injuries sustained when he slipped

on a negligently-maintained floor while carrying an injured

person from the scene).

In 1993, the New Jersey Legislature enacted a statute

entitled, "Rights of recovery granted to law enforcement

officers, fire fighters and emergency service personnel or their

estates in cases of injury or death resulting from neglect,

willful omission or culpable conduct," which provides:

> In addition to any other right of action or recovery
> otherwise available under law, whenever any law
> enforcement officer, firefighter, or member of a duly
> incorporated first aid, emergency, ambulance or rescue
> squad association suffers any injury, disease or death
> while in the lawful discharge of his official duties
> and that injury, disease or death is directly or
> indirectly the result of the neglect, willful omission,
> or willful or culpable conduct of any person or entity,
> other than that law enforcement officer, firefighter or
> first aid, emergency, ambulance or rescue squad
> member's employer or co-employee, the law enforcement
> officer, firefighter, or first aid, emergency,
> ambulance or rescue squad member suffering that injury
> or disease, or, in the case of death, a representative
> of that law enforcement officer, firefighter or first
> aid, emergency, ambulance or rescue squad member's
> estate, may seek recovery and damages from the person
> or entity whose neglect, willful omission, or willful
> or culpable conduct resulted in that injury, disease or
> death.

N.J. Stat. Ann. 2A:62A-21.

On the statute's face, it appears that Porch, a law enforcement officer, is permitted to seek damages from Garrison, whose willful conduct Porch claims resulted in his injury.  Since the enactment of this statute, the New Jersey courts have been split on its interpretation, however.  The appellate court in Kelly v. Ely, 764 A.2d 1031, 1034 (N.J. Super. Ct. App. Div. 2001), cert. denied, 772 A.2d 937 (N.J. 2001), determined that the statute did not abrogate the fireman's rule, "absent a clearer declaration of the legislative intent to achieve such an end."  The appellate court in Ruiz v. Mero, however, found the contrary, holding that the text, context, and legislative history of the statute lead "to the same result: abrogation of the fireman's rule."  Ruiz, 897 A.2d at 411 (permitting an on-duty police officer to bring tort claims against the owner of a club where he was attacked and injured).  The Third Circuit Court of Appeals has also had the opportunity to address the issue in Roma v. United States, 344 F.3d 352, 359-62 (3d Cir. 2003), where it predicted that the New Jersey Supreme Court "would not follow Kelly because the language of the statute was clear and its purpose unmistakable and permitted the plaintiff firefighter to pursue his cause of action against the possibly negligent parties."  Ruiz, 897 A.2d at 410-11 (discussing Roma).

The conflict is close to being resolved.  The Ruiz case is now on appeal to the New Jersey Supreme Court, which, on January

29, 2007, heard oral arguments on the issue.  See Ruiz v. Mero, 897 A.2d 407, 408 (N.J. Super. Ct. App. Div. 2006), cert. granted, 907 A.2d 1012 (N.J. 2006); http://www.judiciary.state.nj.us/calendars/sc_appeal.htm.  To date, the court has not issued its opinion.

In his opposition, Garrison does not address Porch's motion for summary judgment on his assault and battery counterclaim as to liability, and Porch does not address the fireman's rule, the New Jersey statute, or any of the cases discussing the rule or the statute.  Although the fireman's rule and the case law primarily concern a police officer suing a property owner for damages, the statute appears to permit on-duty police officers' claims for any tort committed by any individual.  Thus, because the statute's affect on the fireman's rule is unsettled and currently being deliberated by New Jersey's highest court, this Court will deny without prejudice Porch's motion, and stay Porch's counterclaims until the issue of whether Porch may maintain state law tort claims against Garrison is addressed by the New Jersey Supreme Court.

## IV.  CONCLUSION

For the reasons expressed above, Porch is entitled to summary judgment on Garrison's § 1983 claims and all his state law claims.  Porch's motion for summary judgment as to Garrison's

liability on his counterclaim for assault and battery is
dismissed without prejudice, and all of Porch's state law
counterclaims are stayed pending the decision of the New Jersey
Supreme Court in <u>Ruiz v. Mero</u>.  An appropriate Order will be
entered.


Dated: March 9, 2007              s/ Noel L. Hillman

At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.