UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL GARRISON,           :    Civ. A. No. 04-1114 (NLH)(AMD)
                            :
        Plaintiff,           :
                            :
    v.                      :    **OPINION**
                            :
WILLIAM PORCH,              :
                            :
        Defendant.           :

**APPEARANCES:**

Paul Richard D'Amato, Esquire
Steven R. Cocchi, Esquire
D'Amato Law Firm
401 New Road
Suite 103
Linwood, NJ 08221

    *Attorneys for Plaintiff*

Joseph M. Scott, Esquire
Barker & Scott, PC
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221

    *Attorney for Defendant*

**HILLMAN**, District Judge

    This matter has come before the Court on Defendant's motion for summary judgment on Plaintiff's claims that Defendant violated his Fourth Amendment rights when Defendant used excessive force in effecting his arrest. For the reasons expressed below, Defendant's motion for summary judgment on Plaintiff's claim against him will be denied.

I.   SUMMARY OF THE FACTS[1]

According to the parties' uncontested statement of facts, on the evening of March 29, 2002, Plaintiff Michael Garrison and several friends met each other at a North Wildwood, New Jersey home, and from there they all took a cab to Moore's Bar.  Prior to arriving at Moore's Bar, Plaintiff had consumed one or two beers and had smoked marijuana.  At the bar, Plaintiff consumed two or three mixed drinks and took an ecstasy pill.  From Moore's Bar, the group walked to one or two other bars, at which Plaintiff consumed more alcoholic beverages.  After midnight, the group walked to Keenan's Bar, where Plaintiff, already intoxicated, consumed a beer.  At approximately 1:50am, Plaintiff and the rest of the group exited Keenan's Bar, and Plaintiff began to urinate outside the bar.  Plaintiff's zipper was down and his pants were unbuttoned while he was urinating.  Defendant William Porch, a City of Wildwood police officer who was dressed in plain clothes for a suspicious person/burglary detail, observed Plaintiff urinating outside of the bar.

At this point, the parties' version of events diverge. According to Plaintiff's deposition testimony, Defendant approached Plaintiff, grabbed his bicep, turned him around, and held both of Plaintiff's fists in his hands.  When Plaintiff

---

[1] These facts are restated from the Court's March 9, 2007 Opinion.

turned around, he had both fists clenched up near his chin with the knuckles facing away from his body. Plaintiff next remembers Defendant pulling him to the ground, but does not recall how he was forced to the ground, which part of his body hit the ground first, or in what position he landed. Once he was on the ground, Plaintiff recalls his ear and stomach being on the sidewalk. At this point, Plaintiff cannot specifically remember what occurred, but he does recall that his face was forced into the ground and that he heard the bones breaking in the back of his neck, he went warm, and then totally limp. Plaintiff does not recall resisting arrest.

According to Defendant, he approached Plaintiff as he was just walking away from the building after urinating. Defendant states that he identified himself as a police officer and illuminated his badge with his flashlight, but Plaintiff continued to walk away. When Plaintiff was about eight feet away, Defendant told Plaintiff that he was not free to go and asked him to produce identification. Defendant states that Plaintiff used expletives and refused to comply. Defendant told Plaintiff that he was not free to leave, he must produce identification, grabbed Plaintiff's left wrist with both hands using a "soft-touch empty-hand" technique, and told him he was under arrest. According to Defendant, Plaintiff's body began to get rigid and he began to pull away and turn around in an attempt

to face Defendant.  Defendant states that he repeated several times that Plaintiff was under arrest and commanded him to stop resisting.  At this point, Defendant states that he thought Plaintiff was going to strike him, so he used Plaintiff's spinning momentum to sidestep him and place him up against the wall.  Defendant states that Plaintiff attempted to head-butt Defendant "in reverse" and continued to resist arrest.  In order to avoid Plaintiff's head-butt, Defendant states that he moved away and Plaintiff spun around with his fist raised in a motion to hit Defendant.  Defendant then used a pulling technique to Plaintiff's arm to pull him to the ground.  While he was on the ground, Defendant states that Plaintiff continued to thrash his entire body, kick his legs, and pull his arms toward his chest to avoid handcuffing.  According to Defendant, Plaintiff's five friends were completely surrounding them and shouting and gesturing in rage toward Defendant's attempts to effect Plaintiff's arrest.

Defendant was able to secure one handcuff, but he had to move from Plaintiff's left side to his right side because Plaintiff kicked him several times.  Defendant then radioed for back-up.  When another officer arrived, Defendant sat down below Plaintiff's knees to stop him from kicking.  During this encounter, Defendant states that Plaintiff kicked him repeatedly, trashed his head back and forth, "continuously trying to spin out

4

of control," and continued to yell obscenities.  At this point, Plaintiff began to complain of neck and back pain and his body became limp and stationary.  Plaintiff told Defendant that Defendant broke his neck.  Defendant was then able to secure Plaintiff's right arm and complete handcuffing.  An ambulance was called and Plaintiff was transported to the hospital.[2]

Plaintiff was charged with aggravated assault on a police officer, resisting arrest, disorderly persons conduct, and urinating in public.  The grand jury indicted Plaintiff on the aggravated assault and resisting arrest charges.  On May 30, 2003, Plaintiff pled guilty to an amended charge of simple assault in violation of N.J. Stat. Ann. 2C:12-1A, and purposefully resisting arrest, in violation of N.J. Stat. Ann.

---

[2]According to Plaintiff's Complaint, he was transported to Burdette Tomlin Memorial Hospital, where he was unable to move his lower extremities and was found to have neural deficits.  He was then transferred to Atlantic City Medical Center, City Division, where X-Rays revealed a possible cervical spine fracture located at C5-C6.  Plaintiff was then placed in a halo, intubated and sedated, and airlifted to Thomas Jefferson University Hospital, where he was an inpatient from March 30, 2002 through April 4, 2002.  While at Thomas Jefferson University Hospital, Plaintiff was diagnosed with a C6 body fracture, C6 bilateral laminar fracture, C5 right laminar fracture, and spinal cord edema and intramedullary signal changes from C5 to C7.  He was then transferred to Magee Rehabilitation Hospital where he was an inpatient from April 4, 2002 through April 26, 2002. Plaintiff received outpatient rehabilitation therapy at Magee Riverfront Outpatient Physical Therapy from April 29, 2002 through September 5, 2002.

2C:29-2A.[3]

## II.   PROCEDURAL HISTORY

Defendant's motion for summary judgment was first filed in early 2007.  Defendant had moved for summary judgment on all of Plaintiff's claims, which, in addition to his excessive force claim, included claims for unreasonable seizure, conspiracy, and state law violations.  Defendant had also moved for summary judgment on his counterclaim against Plaintiff for the intentional tort of assault and battery.  On March 9, 2007, the

---

[3]N.J. Stat. Ann. 2C:12-1A, Simple assault, provides,

A person is guilty of assault if he:
(1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
(2) Negligently causes bodily injury to another with a deadly weapon; or
(3) Attempts by physical menace to put another in fear of imminent serious bodily injury.
Simple assault is a disorderly persons persons offense unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty disorderly persons persons offense.

N.J. Stat. Ann. 2C:29-2A,  Resisting arrest; eluding officer, provides,

a. (1) Except as provided in paragraph (3), a person is guilty of a disorderly persons persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest.
. . .
It is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance.

6

Court granted Defendant's motion for summary judgment on all of Plaintiff's claims, but denied without prejudice Defendant's motion for summary judgment on his assault and battery counterclaim, and stayed the action to await the outcome of a dispositive case pending before the New Jersey Supreme Court.

In granting Defendant's motion for summary judgment on Plaintiff's claims against him, the Court found that Plaintiff's unreasonable seizure and excessive force claims were barred by Heck v. Humphrey, 512 U.S. 477 (1994).  Under Heck, if a favorable judgment on a § 1983 damages claim would "necessarily imply the invalidity" of the plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Heck, 512 U.S. at 486-87.  This Court found that a finding in favor of Plaintiff on his unreasonable seizure claim and excessive force claim would imply the invalidity of his guilty pleas for the disorderly persons offenses of simple assault and resisting arrest.

Plaintiff filed an immediate appeal of the Court's decision, but the appeal was dismissed by agreement by the parties, obsensibly because of the pending counterclaim.  In July 2007, the Court ordered that the counterclaim was ripe for resolution due to the decision issued by the New Jersey Supreme Court, ordered the case to be reopened, and directed Defendant to refile

7

his motion for summary judgment.  Defendant complied, and the briefing was completed in early October 2007.

Also in October 2007, Plaintiff filed a motion for reconsideration of the Court's March 9, 2007 Opinion that dismissed his excessive force claim pursuant to Heck.[4]  Although the motion was untimely under the Local Rules, the Court nonetheless addressed Plaintiff's arguments in support of reconsideration of the Court's decision.  Ultimately, the Court reaffirmed the finding that Heck barred Plaintiff's excessive force claim.

Following this decision, Defendant withdrew his motion for summary judgment and stipulated to the dismissal of his counterclaim so that the Heck issue could be appealed by Plaintiff.  On May 26, 2010, the Third Circuit Court of Appeals issued its mandate, which reversed this Court's finding that the Heck doctrine barred Plaintiff's excessive force claim, and remanded the case for further proceedings.  In contrast to this Court's analysis, the Third Circuit found that Plaintiff's conviction for assaulting Defendant did not automatically preclude him from recovering on his § 1983 claim.  (See Docket No. 79-2 at 10.)  Defendant then filed a petition for certiorari to the United States Supreme Court.

---

[4]Plaintiff did not challenge the Court's finding on his unreasonable seizure claim.

Defendant's petition was ultimately denied by the U.S. Supreme Court, see Porch v. Garrison, 131 S. Ct. 820 (Dec. 13, 2010), and pursuant to this Court's order, Defendant refiled his motion for summary judgment as to Plaintiff's excessive force claim.  In his original motion, in addition to his argument based on Heck, Defendant argued that he was entitled to qualified immunity on Plaintiff's excessive force claim because no reasonable jury could find that Defendant did not use reasonable force under the circumstance.[5]  This argument has been reasserted again, the issue has been fully rebriefed, and it is ready for resolution.[6]

---

[5]Defendant also argued that Plaintiff's claim is barred by the principles of judicial estoppel and issue preclusion.  The "basic principle of judicial estoppel . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 319-20 (3d Cir. 2003) (citation omitted). Issue preclusion applies when "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment."  In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992) (citations omitted).  The Court finds that these doctrines mirror the principles of Heck, and are therefore unavailing for the same reasons as articulated by the Third Circuit.

[6]The only claim that remains in the case is Plaintiff's claim of excessive force in violation of the Fourth Amendment, which has been brought pursuant to 42 U.S.C. § 1983.

9

**III. DISCUSSION**

    **A.	Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp.

10

v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Analysis**

The qualified immunity analysis provides the basis to determine whether a claim for a constitutional violation by a law enforcement officer is viable.  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 129 S.

11

Ct. 808, 815 (2009). The doctrine provides a government official immunity from suit rather than a mere defense from liability, and, thus, the issue of whether qualified immunity applies should be decided at the earliest possible stage in litigation. Id.

In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the Plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the Defendant's alleged misconduct? Id. at 816. These questions may be answered in order, but courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818 (receding from Saucier v. Katz, 533 U.S. 194 (1998), which required the two questions to be answered sequentially). If the answer to either question is "no," the analysis may end there. See id. at 823 (finding that because the unlawfulness of the officers' conduct was not clearly established, the officers were entitled to qualified immunity, without having to answer the question of whether the officers violated the Plaintiff's constitutional rights).

In this case, the Court must determine whether Plaintiff has shown a violation of the Fourth Amendment's proscription against the use of excessive force. In determining whether excessive

12

force was used, the Fourth Amendment's "objective reasonableness" test is applied. Sharrar v. Felsing, 128 F.3d 810, 820-21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (relying on Graham, 490 U.S. at 396; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)). "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id.

   In evaluating the proper test for objective reasonableness, the Supreme Court has provided that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation omitted). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--

13

about the amount of force that is necessary in a particular situation." Id.

This Court finds that disputed issues of material fact as to the reasonableness of Defendant's use of force exist, precluding the entry of summary judgment in Defendant's favor.  Viewing Plaintiff's version of the events in the light most favorable to him, Plaintiff was facing a wall and urinating when Defendant suddenly grabbed him from behind, spun him around, and forced him to the ground.  Plaintiff then heard the bones breaking in the back of his neck, he went warm, and then totally limp.  There is no evidence to suggest that at the time Defendant approached Plaintiff, Plaintiff was dangerous, posed a threat to others, or was committing a crime other than public urination.  Plaintiff does not recall resisting Defendant's efforts to apprehend or arrest him.

Plaintiff's case is further supported by the testimony of two of his friends who witnessed the incident.[7]  They testified

---

[7] Defendant contests Plaintiff's use of his friends' testimony to support his opposition to summary judgment because Plaintiff failed to present this evidence in his original opposition.  Although Plaintiff may not have complied with the Local Rules with regard to providing this testimony in a separate statement of undisputed facts, see L. Civ. R. 56.1, it does not seem disputed that these witnesses' testimony has been part of the record since that time.  Even if Plaintiff never presented these witnesses' testimony in his briefing, the Court may consider the existence of such record evidence.  It will be up to Defendant to challenge the credibility or veracity of this testimony.

14

to Defendant's use of force against Plaintiff, and to Plaintiff's lack of resistence.[8] If the scenario described by Plaintiff and his friends is believed by a jury, it could support a finding of excessive force.

Defendant, obviously, tells a very different story, where the inebriated Plaintiff: ignored Defendant's command to not walk away and produce identification, physically resisted apprehension, attempted to hit and head butt Defendant, and continued to flail and resist apprehension while on the ground until Plaintiff went limp.  Defendant also relates that he was surrounded by Plaintiff's five friends who were threatening and raging against Defendant's efforts to apprehend Plaintiff.  Defendant's description of the incident is further supported by

---

[8]Plaintiff argues that even though he cannot remember resisting arrest or assaulting Defendant, the testimony of his friends definitively shows that he did not resist arrest or attempt to assault Defendant.  This position is contradicted by Plaintiff's guilty pleas to resisting arrest and simple assault.  As pointed out by the Third Circuit, however, even if Plaintiff did resist arrest and assault Defendant, a jury could still find that Defendant used excessive force in effecting his arrest.  (Docket No. 79-2 at 10-11, "A reasonable jury could find that, considering Plaintiff's initial behavior which constituted a simple assault, Defendant used an unreasonable amount of force in arresting him, and in doing so violated his constitutional rights.")  Thus, Plaintiff's convictions cannot serve as a basis for precluding Plaintiff's excessive force claims outright, but the Third Circuit did not preclude the use of those convictions to attack Plaintiff's credibility.  Whether or how Plaintiff's convictions affect his credibility is for a jury to decide, as the Court cannot make such a credibility assessment.  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (explaining that a district court may not make credibility determinations or engage in any weighing of the evidence).

15

Plaintiff's guilty pleas to resisting arrest and simple assault. If Defendant's scenario is believed by a jury, it could refute a finding that Defendant's actions were unreasonable under the circumstances.

Thus, this case boils down to credibility. A jury must resolve the disputed issues of fact by determining whose story to credit. Once the jury has done so, the Court may then determine whether Defendant acted reasonably during the situation as found by the jury. This approach will allow the jury to make findings on questions of fact, and then allow the Court to make the ultimate determination of law as to whether Defendant is entitled to qualified immunity. See Curley v. Klem, 499 F.3d 199, 211, 211 n.12 (3d Cir. 2007) ("When the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity, . . . but responsibility for answering that ultimate question remains with the court."); see also id. at 225-26 (dissenting opinion) (internal citations omitted) ("[I]f factual disputes relevant to [the step-two] legal analysis do exist, the court will have to postpone making this determination until the jury resolves all the relevant factual disputes, because determining what actually happened is a prerequisite to determining whether the law clearly established that a particular action was permitted or prohibited

by the Fourth Amendment under those circumstances.  After the jury resolves these relevant fact disputes, presumably through the use of special interrogatories, the court is then capable of deciding whether or not the law clearly permitted or prohibited the conduct constituting the constitutional violation.").

Accordingly, Defendant's motion for summary judgment must be denied.  An appropriate Order will be entered.


Dated: <u>March 29, 2011</u>                      <u>s/ Noel L. Hillman</u>

At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.